907 P.2d 774

**Timothy J. WALSH, Plaintiff–Appellant,**

**v.**

**Serena CHAN, Defendant–Appellee, and Ernest Pong; John Does 1–5; Jane Does 1–5; Doe Partnerships 1–5; Doe Corporations 1–5; and Doe Governmental Entities 1–5, Defendants.**

No. 17426.

Intermediate Court of Appeals of Hawai'i.

Sept. 20, 1995.

As Amended Oct. 5, 1995.

Certiorari Granted Oct. 9, 1995.

David C. Schutter and Paul Smith (David C. Schutter & Associates, of counsel), on the briefs, Honolulu, for plaintiff-appellant.

Randall Y.S. Chung and Daryl M. Arakaki (Matsui Chung & Sumida, of counsel), on the briefs, Honolulu, for defendant-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

Plaintiff–Appellant Timothy J. Walsh (Walsh) appeals in this automobile negligence case from the September 9, 1993(1) Order Granting Defendant Serena Chan's Motion for Entry of Judgment in Favor of Defendant Serena Chan and Against Plaintiff (Judgment Order); (2) Order Denying Plaintiff Timothy Walsh's Motion for New Trial (No New Trial Order); (3) Order Granting Defendant Serena Chan's Motion to Set Aside Taxation of Costs (Non–Taxation Order); and (4) the judgment (September 9, 1993 Judgment) in favor of Serena Chan. We vacate and remand for further trial on the issue of damages.

## FACTS

Walsh brought this automobile negligence case against Defendant–Appellee Serena Chan (Chan) for injuries arising out of a November 13, 1990 collision. Walsh was riding in a car driven by Terry Pynchon (Pynchon). While waiting to make a right turn at an intersection in Kapahulu, Pynchon's car was rear-ended by another car driven by Chan. Prior to trial, Chan admitted liability, and the sole issue for the jury was on the question of damages.

The jury found that Walsh was injured as a result of the accident and awarded him $6,100 for medical expenses and $2,500 for lost wages, for a total of $8,600 in special damages, but awarded him $–0– for general damages. On June 16, 1993, Chan moved for entry of judgment in her favor. Chan had not moved for a directed verdict on the question of the medical tort threshold prior to or during the course of the trial.

The evidence presented at trial indicated that Walsh sustained a sprain in his neck and lower back and sustained a herniated disc at the L4 through L5 level.[1] Dr. Lawrence G. Rotkin (Dr. Rotkin), one of Walsh's treating physicians, testified that these injuries were caused by the November 13, 1990 automobile accident. Dr. John Smith (Dr. Smith), an expert in the field of orthopedic medicine, also testified that Walsh sustained a herniated disc at the L4 through L5 level as a result of the accident. Dr. Smith testified that he had injected cortisone shots into Walsh's spinal cord on at least three visits and into his back muscles on at least another four visits, and that these cortisone injections were painful. Local anesthetic was used. Dr. Smith further performed surgery on Walsh's back in order to correct his significant back pain

---

1. L4 and L5 refer to the fourth and fifth lumbar vertebrae in the human spine. The medical profession has assigned numbers to the lumbar region from top to bottom, L1 through L5, to identify the vertebrae. *The Sloane–Dorland Annotated Medical–Legal Dictionary* 659–60 (1987).

and left leg pain. Dr. Smith further testified that his charges for treatment, including the cortisone injections and surgery, together with the Queen's Medical Center's bill, were reasonable and necessary as a result of the injuries from the subject automobile accident. Walsh introduced into evidence medical bills which were paid or accrued in excess of $30,000.

On June 16, 1993, Chan filed her Motion for Entry of Judgment in Favor of Defendant Serena Chan and Against Plaintiff based on the claim that, according to the Special Verdict rendered by the jury, Walsh had not met the threshold requirements of Hawai'i Revised Statutes (HRS) § 431:10C–306 (Special Pamphlet 1987).[2] On June 23, 1993, Walsh filed a "Taxation of Costs."

On June 28, 1993, Chan filed her Motion to Set Aside Taxation of Costs.

On August 3, 1993, Walsh filed his Motion for New Trial.

On September 9, 1993, the trial court entered the Judgment Order, No New Trial Order, and Non–Taxation Order in favor of Chan. Accordingly, the trial court entered the September 9, 1993 Judgment in favor of Chan.

### DISCUSSION
### I. JUDGMENT ORDER

Walsh claims that the trial court committed reversible error in entering its Judgment Order in favor of Chan after the jury returned a verdict in favor of Walsh. We agree.

■ The trial court's entry of its Judgment Order and its September 9, 1993 Judgment in favor of Chan were based on its interpretation of HRS § 431:10C–306 (Special Pamphlet 1987). We review the trial court's construction of a statute *de novo. Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.,* 76 Hawai'i 454, 460, 879 P.2d 1037, 1043 (1994) (vacating order granting motion for summary judgment based on an erroneous interpretation of statute).

■ Rule 58 of the Hawai'i Rules of Civil Procedure (HRCP) provides as follows:

**ENTRY OF JUDGMENT.** Unless the court otherwise directs and subject to the provisions of Rule 54(b), judgment upon the verdict of a jury shall be entered forthwith by the clerk; *but the court shall direct the appropriate judgment to be entered upon a special verdict* or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49. When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him [or her] of the direction; but when the court directs entry of judgment for other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk. The filing of the judgment in the office of the clerk constitutes the entry of the judgment; and the judgment is not effective before such entry. The entry of the judgment shall not be delayed for the taxing of costs. Every judgment shall be set forth on a separate document.

(Emphasis added.)

Relying on HRCP Rule 58, Chan requested that the trial court enter a judgment appropriate to the May 21, 1993 special verdict. Since the alternative of entry of judgment upon a general verdict by the clerk was inapplicable, HRCP Rule 58 required the court to direct the entry of judgment upon a special verdict. When the jury returned a special verdict in favor of Walsh, HRCP Rule 58 required an entry of judgment in favor of Walsh. Therefore, the appropriate judgment should have been entered for Walsh, and the trial court erred in entering a judgment for Chan because it wrongfully applied the threshold requirement.

Chan urges that Walsh did not satisfy the threshold requirements of HRS § 431:10C–306, therefore, she was not liable. We disagree. Walsh's medical expenses exceeded the medical-rehabilitative limit established in HRS § 431:10C–308 (Special Pamphlet

---

**2.** *See infra* at ——, 907 P.2d at 778.

1987)[3] for expenses covered in HRS § 431:10C–103(10)(A) (Supp.1989).[4] The applicable medical-rehabilitative limit for this accident was $7,600.

HRS § 431:10C–306 provides in relevant part:

(a) Except as provided in subsection (b), this article abolishes tort liability of the following persons with respect to accidental harm arising from motor vehicle accidents occurring in this State:

(1) Owner, operator or user of an insured motor vehicle; or

**3.** Hawai'i Revised Statutes (HRS) § 431:10C–308 provides as follows:

**Medical-rehabilitative limit.** (a) The commissioner shall annually revise the medical-rehabilitative limit in the following manner:

(1) The commissioner shall determine the percentage change in the medical care category of the consumer price index for all urban consumers for the Western region as published by the bureau of labor statistics from April of the previous year to April of the current year;

(2) The medical-rehabilitative limit for the next no-fault policy term year shall be the current medical-rehabilitative limit increased or decreased by the product of the current medical-rehabilitative limit multiplied by the percentage change in the medical care index;

(3) The medical-rehabilitative limit shall then be rounded to the nearest $100 for actual use, but the exact value shall be used in subsequent determinations under this section; and

(4) The commissioner shall use the amount of $5,000 as the initial threshold base on which calculations shall be made in accordance with this section for the purpose of determining the medical-rehabilitative limit for the next no-fault policy term year.

(b) For the purposes of this section, the no-fault policy term year shall commence annually on September 1 and terminate the following August 31. For each term year, the commissioner shall make the tabulation of data necessary for the computation of the medical-rehabilitation limit during the period April 1 to March 31 preceding the September 1 start of the no-fault policy term year.

HRS § 431:10C–308 was amended in 1992. *See* Act 124, § 12, 1992 Haw.Sess.Laws 210, 217–18. However, amended HRS § 431:10C–308 does not apply in this case because the accident occurred in 1990. The 1992 amendment did not change the requirement of the medical-rehabilitative limit, but established that limit at $10,000 for the one-year period commencing September 1, 1992, and changed the basis of its computation for subsequent years.

(2) Operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle.

(b) Tort liability is not abolished as to the following persons ... in the following circumstances:

\*　　\*　　\*　　\*　　\*　　\*

(2) Injury occurs to such person in a motor vehicle accident *in which the amount paid or accrued exceeds the medical-rehabilitative limit estab-*

**4.** HRS § 431:10C–103(10)(A) provides as follows:

No-fault benefits, sometimes referred to as personal injury protection benefits, with respect to any accidental harm means:

(i) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional, nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, and x-ray. The foregoing expenses may include any nonmedical remedial care and treatment rendered in accordance with the teachings, faith, or belief of any group which depends for healing upon spiritual means through prayer;

(ii) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;

(iii) Monthly earnings loss measured by an amount equal to the lesser of:

(I) $900 a month; or

(II) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity;

(iv) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to:

(I) Expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of the person or the persons' family up to $800 a month;

(II) Funeral expenses not to exceed $1,500; and

(III) Attorney's fees and costs to the extent provided in section 431:10C–211(a);

provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 431:10C–410(3)(A), shall not include benefits under items (i), (ii), and (iii) for any person receiving public assistance benefits.

HRS § 431:10C–103(10)(A) was subsequently amended in 1992: *See* Act 123, § 2, 1992 Haw. Sess.Laws 206, 207.

lished in section 431:10C–308 for expenses provided in section 431:10C–103(10)(A) and (B); provided that the expenses paid shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit;

(Emphasis added.)

■ Where the language is plain and unambiguous, our sole duty is to give effect to the plain and obvious meaning of the statute. *State v. Ramela,* 77 Hawai'i 394, 395, 885 P.2d 1135, 1136 (1994); *Ross,* 76 Hawai'i at 461, 879 P.2d at 1044.

The plain language of HRS § 431:10C–306(b)(2) provides that tort liability is not abolished where injury occurs to "such person in a motor vehicle accident *in which the amount paid or accrued* exceeds the medical rehabilitative limit established in Section 431:10C–308." *Id.* (emphasis added). The medical bills, paid or accrued, introduced in evidence at trial by Walsh exceeded $30,000, and such expenses "shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit." *Id.* The trial court erred in entering judgment in favor of Chan since HRS § 431:10C–306(b)(2) does not require that a jury return a verdict in excess of the medical-rehabilitative limit established in HRS § 431:10C–308, but requires that "the amount paid or accrued exceeds the medical-rehabilitative limit." Walsh was not required to obtain a verdict in excess of the medical rehabilitative limit.

■ The intent of the legislature in establishing the medical-rehabilitative limit in the no-fault law was to provide a jurisdictional requirement similar to the then $10,000 [5] jurisdictional amount in diversity suits in the federal court: "In order to maintain an action, the claimant must show that the amount in controversy exceeds $5,000 (this amount being intended by your committee to be a jurisdictional requirement similar to the $10,000 jurisdictional requirement in federal diversity suits)." Hse.Stand.Comm.Rep. No. 187, 1973 House Journal, at 837.

In federal court, the jurisdictional amount necessary for diversity cases is determined prior to trial and is not dependent upon the amount recovered at trial. *See Saint Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Molina v. Richardson,* 578 F.2d 846, 849 (9th Cir.1978); *Gullborg v. Rizzo,* 331 F.2d 557, 561 (3d Cir.1964); *Calhoun v. Kentucky–West Virginia Gas Co.,* 166 F.2d 530, 531 (6th Cir.1948); 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3702, at 31 (2d ed. 1985). Thus, in federal court if a plaintiff receives an award less than the jurisdictional amount, he does not lose his award and the court is not divested of jurisdiction over the suit.

Accordingly, we conclude that the trial court erred in entering the Judgment Order in favor of Chan on the ground that Walsh failed to meet the liability threshold. The trial court should have entered judgment in favor of Walsh consistent with the special verdict of the jury.

Walsh also contends that the court erred in entering the Judgment Order because Chan did not move for a judgment notwithstanding the verdict, precluding her from obtaining judgment in her favor. In light of our ruling, this issue is moot.

## II. NO NEW TRIAL ORDER

■ Walsh challenges the No New Trial Order. The standard of appellate review of the trial court's decision denying Walsh's Motion for New Trial is abuse of discretion. *Aga v. Hundahl,* 78 Hawai'i 230, 237, 891 P.2d 1022, 1029 (1995). " 'An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Id.* (quoting *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994)) (internal quotation omitted).

### A. Inconsistent Verdicts

■ Walsh claims that the trial court abused its discretion in the No New Trial Order because the jury awarded $8,600 for

---

**5.** The federal diversity jurisdictional amount is now $50,000. *See* 28 U.S.C. § 1332(A) (1988).

special damages and zero for general damages. We agree.

In the instant case, the parties agreed to the court's administering the following relevant instructions to the jury:

Pain is subjective and, therefore, medical science is not always able to determine its actual existence. But the mere fact that subjective symptoms fail to disclose conclusive evidence of pain is not in itself sufficient, by any standard, to justify a finding that such pain does not exist. It is for you to decide, considering all the evidence, whether or not such pain did and does exist.

Mental suffering includes mental worry, anxiety, distress, grief, where they are shown to exist.

. . . .

Special damages are those elements of damages which fix the amount precisely or permit you to determine the amount with reasonable certainty from the evidence.

General damages are those damages which fairly and adequately compensate the plaintiff for any past, present, and reasonably probable future disability, pain, emotional suffering and mental anguish caused by the injuries sustained.

. . . .

The plaintiff is entitled to damages in such amount as in your judgment will fairly and adequately compensate him for the injuries which he suffered. In arriving at the amount of such damage, you should consider:

1. The extent and nature of the injuries he received, and also the extent to which, if at all, the injuries he received are permanent in character;

2. The scar he received, and also the extent to which, if at all, the scar is permanent in character;

3. The reasonable value of the medical services, examination, attention and care by physicians, surgeons, physical therapists, hospitals, nurses, x-rays and skilled technicians and drugs, and supplies reasonably required and actually given in the treatment of the plaintiff and the reasonable value of all such medical services reasonably probable to be required in the treatment of the plaintiff in the future;

4. The pain and suffering, disability, and mental anguish which he has endured and is reasonably probable to suffer in the future because of the injuries, if any;

5. The lost wages sustained by the plaintiff in the past and the lost wages he is reasonably probable to sustain in the future;

6. The impairment of his earning capacity; and

7. The loss of his enjoyment of life.

After deliberation, the jury filled out the special verdict form in relevant part, as follows:

In this case, the Defendant Serena Chan has admitted that she was at fault for the accident of November 13, 1990. Therefore, the only question for you to decide is what are the injuries and damages legally caused to the Plaintiff by the accident and the amount to award for such injuries and damages.

*QUESTION NO. 1*

Was the November 13, 1990 accident a legal cause of injury to Plaintiff Timothy Walsh? [Answer "yes" or "no" in the space provided below.]

YES   X                NO_____ .

[If you answered "YES" to Question No. 1, then go on to answer Question No. 2. If you answered "NO" to Question No. 1, do not answer any further questions, but please sign and date this document and call the Bailiff.]

*QUESTION NO. 2*

After reduction for apportionment, if any, what are Plaintiff Timothy Walsh's total damages as a result of the injuries he sustained in the November 13, 1990 accident?

SPECIAL DAMAGES

Medical Care . . . . . . . . . . $ 6,100.00

Lost Wages . . . . . . . . . . . $ 2,500.00

Other Special Damages . . $   0

GENERAL DAMAGES . . . . . . $   0

We recently considered the issue and held that the jury verdict, which awarded $7,000 in special damages and zero for general damages, was inconsistent and against the great weight of the evidence, and thus, improper. *Dunbar v. Thompson,* 79 Hawai'i 306, 314–15, 901 P.2d 1285, 1293–1294 (App. 1995). In invalidating the verdict, we reasoned that "Plaintiff clearly experienced some pain and suffering, and the jury's verdict awarding Plaintiff zero general damages for pain and suffering was against the great weight of the evidence." *Id.* at 315, 901 P.2d at 1294.

In invalidating such verdicts, other courts commonly reason that the "zero" general damages award is either: (1) inconsistent with the special damages award; (2) in disregard of the proper instructions of the trial court; (3) against the great weight of the evidence; or (4) the result of an improper compromise by jurors unconvinced of liability but willing to compromise their positions in return for a limitation of damages to actual out-of-pocket losses. Annotation, *Validity of Verdict Awarding Medical Expenses to Personal Injury Plaintiff, But Failing to Award Damages for Pain and Suffering,* 55 A.L.R.4th 186, 192 (1987); 1 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Actions* § 4.64[2] (1995); 22 Am.Jur.2d *Damages* § 42 (1988).

In the instant case, we decide that (1), (2), and (3) apply. A verdict is characterized as inconsistent where there is sufficient evidence to support an award for pain and suffering. 1 *Damages in Tort Actions* § 4.64[2]; 22 Am.Jur.2d *Damages* § 42.

Several jurisdictions have followed this analysis. For example, in *Hammett v. Zimmerman,* 804 S.W.2d 663 (Tex.App.1991), the Texas Court of Appeals invalidated a jury verdict which awarded plaintiff, who was injured in an automobile accident, special damages for medical expenses but no damages for pain and suffering because the verdict was "so against the great weight and preponderance of the evidence as to be manifestly unjust." *Id.* at 668. The court reversed and remanded for a new trial on damages. *Id.* at 669. The Texas Court of Appeals reasoned that "[w]hen there is uncontroverted evidence of an objective injury, a jury finding that the plaintiff suffered no past physical impairment and pain is against the great weight and preponderance of the evidence." *Id.* at 664. *Accord, Sansom v. Pizza Hut of East Texas, Inc.,* 617 S.W.2d 288 (Tex.Civ.App.1981).

Other courts have decided that a verdict awarding plaintiff special damages and no damages for pain and suffering is inconsistent and against the weight of the evidence. *Powers v. Johnson,* 562 So.2d 367 (Fla.App.), *review dismissed,* 570 So.2d 1304 (Fla.1990). *See also, Jackson v. Taylor,* 912 F.2d 795 (5th Cir.1990); *Cowan v. Flannery,* 461 N.W.2d 155 (Iowa 1990); *Rice v. Merchants Nat'l Bank,* 213 Ill.App.3d 790, 157 Ill.Dec. 370, 572 N.E.2d 439 (1991); *Hardy v. Osborn,* 54 Ohio App.3d 98, 560 N.E.2d 783 (1988); *Wilson v. R.D. Werner Co.,* 108 Cal. App.3d 878, 166 Cal.Rptr. 797 (1980); *Burkett v. Moran,* 410 P.2d 876 (Okla.1965). We decide to follow this line of cases. The jury verdict in the case at hand is inconsistent. The jury awarded damages for medical expenses in the amount of $6,100 and damages for lost wages in the amount of $2,500, but awarded zero general damages. The damage award is inconsistent because in awarding the amount of $6,100 towards medical care, the jury determined that part of Walsh's injuries was caused by the accident and there was evidence of pain and suffering by Walsh.

Upon review of the records, we cannot tell with certainty the jury's decisions as to which of Walsh's injuries were caused by the accident or which medical expenses were included in its award of $6,100. Dr. Rotkin diagnosed Walsh's injuries as a sprain in his neck and lower back and a herniated disc at the L4 through L5 levels and stated that these injuries resulted from the automobile accident of November 13, 1990. Dr. Smith testified that Walsh sustained a herniated disc at the L4 through L5 levels which was caused by the subject accident and confirmed by a CAT scan [6] performed on Walsh.

---

6. CAT scan refers to a computerized axial tomography scan which makes a record of the internal structures of the body by passing x-rays through the body to act on specially sensitized film. *The Sloane–Dorland Annotated Medical–Legal Dictionary* 123 (1987).

There is sufficient evidence of pain and suffering experienced by Walsh. Dr. Smith testified that the cortisone injections into Walsh's spinal cord and back muscles were painful, as were the back surgery and post-operative recovery.

However, the jury may have decided that the herniated disc in the lower back, the surgery, and the cortisone injections were not caused by the subject accident. The jury certainly has the prerogative to so decide. Even if the jury decided that Walsh sustained the sprain injuries in his neck and lower back and awarded the medical expenses for the treatment of his sprain injuries, but did not accept the herniated disc injury or its related expenses as being caused by the accident, there still is sufficient evidence that Walsh experienced pain and suffering to require some award of general damages.

Dr. Rotkin's medical care of Walsh's sprain injuries included x-rays of the neck and lower back, an electric stimulation treatment, numerous physical therapy treatments, electromyography tests, motor nerve velocity tests, and a number of prescribed pain medication. The total value of the foregoing expenses comes close to and is consistent with the jury's award of $6,100 for medical care.

The jury's award of $2,500 for lost wages is also indicative of its conclusion that Walsh's injuries sufficiently disabled him from working for at least an aggregate of one month, since the award of $2,500 is nearly equivalent to his gross monthly income at the time of the accident.

Thus, for the jury to award $6,100 for medical expenses and $2,500 lost wages in the case at hand is inconsistent with its failure to award at least some amount for general damages.

We note that apportionment of a pre-existing condition may be an explanation for a low award of pain and suffering. However, where the jury finds a pre-existing condition, the jury apportions damages between the pre-existing injury and aggravation of the pre-existing injury. *Montalvo v. Lapez,* 77 Hawai'i 282, 294, 884 P.2d 345, 356, *reconsideration denied,* 77 Hawai'i 489, 889 P.2d 66

(1994). By awarding special damages for medical expenses, the jury must have determined that Walsh sustained some injury as a result of the November 13, 1990 accident and apportioned at least some part of his overall medical condition to the subject accident. If so, it was inconsistent for the jury not to find some pain and suffering for that part of the injury attributable to the subject accident and therefore award at least some amount for general damages.

Because the verdict is inconsistent in failing to award Walsh any general damages, we vacate the No New Trial Order and September 9, 1993 Judgment.

### B. Driver's Testimony

■ Walsh alleges that the trial court abused its discretion in denying a new trial on the grounds that it erroneously granted Chan's motion in limine to exclude driver Pynchon's testimony concerning her alleged injuries, which was offered to prove that the force of the impact was sufficient to cause injury to Walsh. We agree with Walsh. Chan argued that Pynchon's testimony should be excluded because it was irrelevant and unduly prejudicial to Chan.

On appeal, we review the trial court's decisions made pursuant to Hawai'i Rules of Evidence (HRE) Rule 401 under the right/wrong standard of review, while we review decisions made pursuant to HRE Rule 403 under the abuse of discretion standard. *State v. Alston,* 75 Haw. 517, 538, 865 P.2d 157, 168 (1994).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 401. However, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." HRE Rule 403.

The trial court granted the motion in limine to exclude Pynchon's testimony without stating the basis for its ruling. In the mo-

tion in limine, Chan objected to the admission of Pynchon's testimony because it was: (1) irrelevant; and (2) prejudicial because, according to Chan, she could not be expected to defend against the issue regarding Pynchon's alleged physical injuries when Walsh never raised the issue in his pleading.

As to whether Pynchon's testimony was irrelevant, the jury heard Chan's reconstruction expert testify that the force of impact was not sufficient to cause Walsh's injuries. Conversely, Walsh's reconstruction expert testified that the impact was strong enough. Because of the conflicting expert testimonies, Pynchon's testimony regarding her own injuries was clearly relevant to the factual issue of whether, and if so, to what extent, the rear-end collision caused Walsh's injuries. As to whether Pynchon's testimony was prejudicial, no unfair prejudice existed because Walsh named Pynchon as a prospective witness on the issue of damages in his pre-trial statement filed and served on Chan on May 4, 1992.

Because Pynchon's testimony was not irrelevant or prejudicial, we hold that the trial court erred when it excluded Pynchon's testimony regarding the fact that she also suffered injuries in the accident and, accordingly, reverse the No New Trial Order.

## III.  NON–TAXATION ORDER

Inasmuch as we are vacating the judgment and remanding the case for a new trial, the Non–Taxation Order is set aside.

### CONCLUSION

For the reasons set forth above, we hereby vacate the September 9, 1993 Order Granting Defendant Serena Chan's Motion for Entry of Judgment in Favor of Defendant Serena Chan and Against Plaintiff, Order Denying Plaintiff Timothy Walsh's Motion for New Trial, Order Granting Defendant Serena Chan's Motion to Set Aside Taxation of Costs, and September 9, 1993 Judgment in favor of Serena Chan.  Because the parties stipulated to Chan's liability and the only issue on appeal is damages, we remand for a new trial on damages.