908 P.2d 1198

Timothy J. WALSH, Plaintiff–Appellant,

v.

Serena CHAN, Defendant–Appellee,

and

Ernest Pong, John Does 1–5, Jane Does 1–5, Doe Partnerships 1–5, Doe Corporations 1–5, and Doe Governmental Entities 1–5, Defendants.

No. 17426.

Supreme Court of Hawai'i.

Dec. 27, 1995.

Randall Y.S. Chung and Daryl M. Arakaki of Matsui, Chung, Sumida & Chang, Honolulu, for defendant-appellee-petitioner Serena Chan.

David C. Schutter and Paul V. Smith of David C. Schutter & Associates, Honolulu,

for plaintiff-appellant-respondent Timothy J. Walsh.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this negligence case stemming from an automobile accident, plaintiff-appellant Timothy J. Walsh appealed from the First Circuit Court's: (1) order granting defendant-appellee Serena Chan's motion for entry of judgment; (2) order denying Walsh's motion for new trial; (3) order granting Chan's motion to set aside taxation of costs; and (4) judgment in favor of Chan. By opinion filed September 20, 1995, the Intermediate Court of Appeals (ICA) vacated the judgment and orders appealed from and remanded the case for a new trial on damages. *See Walsh v. Chan,* 80 Hawai'i 188, 907 P.2d 774 (Haw.Ct. App.1995).

In so holding, the ICA concluded that the trial court erred in granting Chan's motion to preclude the admission of the oral testimony of Terri Pynchon, the driver of the vehicle in which Walsh was a passenger at the time of the accident. The ICA reasoned, *inter alia,* that, because Pynchon's testimony was both relevant and not prejudicial, Walsh's motion for new trial should have been granted.

We granted certiorari and take this opportunity to review the ICA's ruling with respect to Pynchon's testimony. For the reasons discussed below, we agree with the ICA that Pynchon's testimony was relevant, but we disagree with the ICA's conclusion that the testimony's probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence in this case. We therefore reverse the portion of the ICA's decision vacating the trial court's order denying Walsh's motion for new trial on that basis. The ICA's opinion is affirmed in all other respects, and the case is remanded for a new trial.

## I. BACKGROUND

The facts forming the basis of the dispute in the present case are exhaustively set forth in the ICA's opinion. *See Walsh,* at 189–90, 907 P.2d at 775–76. Therefore, we briefly recount only the pertinent facts.

On November 13, 1990, Walsh was a passenger in a car driven by Pynchon. While waiting to make a right turn at the intersection of Campbell Avenue and Kapahulu Avenue in the City and County of Honolulu, Pynchon's car was struck from behind by another vehicle driven by Chan. Prior to trial, Chan admitted liability; therefore, the sole issue for the jury to consider was whether Walsh sustained any injuries as a result of the accident, and, if so, the nature and extent of those injuries and damages.

Also, prior to trial, Walsh named Pynchon as a trial witness to testify as to her own injuries, purportedly to bolster the existence of Walsh's injuries and to refute the anticipated testimony of the defense's accident reconstruction expert that the force generated by the impact between the two vehicles involved in the accident was insufficient to cause injury. Chan moved in limine to preclude, *inter alia,* the admission of Pynchon's oral testimony as to her injuries on the grounds that such testimony was irrelevant and unduly prejudicial.

In support of her motion in limine, Chan argued that Walsh could not establish the proper foundation for the admission of Pynchon's testimony because Walsh: (1) would have to establish that Pynchon's anatomy and physical condition were the same or substantially similar to that of Walsh at the moment immediately before the accident; (2) had neither done any discovery regarding Pynchon's physical condition nor disclosed any of Pynchon's medical records; and (3) had not listed as witnesses any of Pynchon's treating professional health care providers or any expert witnesses to opine as to the design of the driver's and passenger's seats in Pynchon's car and the effect any design differences may have had upon the forces generated by the collision at issue.

Walsh argued that Pynchon's testimony was relevant to whether the collision between Chan's and Pynchon's cars was sufficiently strong so as to cause injury generally. After a hearing on May 10, 1993, the trial court granted Chan's motion in limine, thus precluding Pynchon from testifying.

The case proceeded to trial, and the jury awarded Walsh $8,600.00 in special damages ($6,100.00 in medical expenses and $2,500 in lost wages) and no general damages. Asserting that Walsh's damages conclusively established that he had failed to satisfy the requirements of Hawai'i Revised Statutes (HRS) § 431:10C–306(b)(2) (Spec. Pamp.1987),[1] in that his damages did not exceed the medical-rehabilitative limit for expenses provided in HRS § 431:10C–103(10)(A) (Supp.1989),[2] Chan moved for entry of judgment in her favor, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 58. The trial court agreed with Chan's interpretation of HRS § 431:10C–306, and, after denying Walsh's motion for new trial, entered judgment in favor of Chan. This timely appeal followed.

As previously stated, the ICA reversed the trial court's judgment and orders and remanded the case for a new trial, holding, *inter alia*, that, because the trial court erroneously granted Chan's motion in limine to preclude Pynchon's testimony concerning her alleged injuries, Walsh's motion for new trial should have been granted.[3] The ICA noted:

> As to whether Pynchon's testimony was irrelevant, the jury heard Chan's [accident]

---

1. HRS § 431:10C–306 provides in pertinent part:

   (a) Except as provided in subsection (b), this article abolishes tort liability of the following persons with respect to accidental harm arising from motor vehicle accidents occurring in this State:
   (1) Owner, operator or user of an insured motor vehicle; or
   (2) Operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle.
   (b) Tort liability is not abolished as to the following persons ... in the following circumstances:

   (2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 431:10C–308 for expenses provided in section 431:10C–103(1)(A) and (B); provided that the expenses paid shall be presumed to be reasonable and necessary in establishing the medical-rehabilitative limit[.]

2. HRS § 431:10C–103(10)(A) provides in pertinent part:

   No-fault benefits, sometimes referred to as personal injury protection benefits, with respect to any accidental harm means:
   (i) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional, nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, and x-ray. The foregoing expenses may include any nonmedical remedial care and treatment rendered in accordance with the teachings,

   faith or belief of any group which depends for healing upon spiritual means through prayer;
   (ii) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;
   (iii) Monthly earnings loss measured by an amount equal to the lesser of:
   (I) $900 a month; or
   (II) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity;
   (iv) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to:
   (I) Expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of the person or the person's family up to $800 a month;
   (II) Funeral expenses not to exceed $1,500; and
   (III) Attorney's fees and costs to the extent provided in section 431:10C–211(a);
   provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 431:10C–410(3)(A), shall not include benefits under items (i), (ii), and (iii) for any person receiving public assistance benefits.

3. The ICA also held that the trial court abused its discretion in denying Walsh's motion for new trial because the jury's verdict was irreconcilably inconsistent in that it failed to award Walsh any general damages.

reconstruction expert testify that the force of impact was not sufficient to cause Walsh's injuries. Conversely, Walsh's reconstruction expert testified that the impact was strong enough. Because of the conflicting expert ·testimonies, Pynchon's testimony regarding her own injuries was clearly relevant to the factual issue of whether, and if so, to what extent, the rear-end collision caused Walsh's injuries.

As to whether Pynchon's testimony was prejudicial, no unfair prejudice existed because Walsh named Pynchon as a prospective witness on the issue of damages in his pre-trial statement filed and served on Chan on May 4, 1992.

Because Pynchon's testimony was not irrelevant or prejudicial, we hold that the trial court erred when it excluded Pynchon's testimony regarding the fact that she also suffered injuries in the accident and, accordingly, reverse [the trial court's order denying Walsh's motion for new trial].

*Walsh*, at 196, 907 P.2d at 782. Chan timely filed a petition for writ of certiorari on September 29, 1995, which we granted by order filed October 9, 1995.

## II. *STANDARD OF REVIEW*

The sole issue we address today on certiorari is whether the ICA erred in vacating the trial court's order denying Walsh's motion for new trial on the basis that Chan's motion in limine to exclude Pynchon's oral testimony should have been denied. Although the trial court did not state its basis for granting Chan's motion in limine in its order, the memoranda in support of and in opposition to the motion indicate that Chan

sought exclusion of Pynchon's testimony solely on grounds of relevance, pursuant to Hawai'i Rules of Evidence (HRE) Rules 401,[4] 402[5] and 403.[6] As we have previously noted,

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Craft v. Peebles*, 78 Hawai'i 287, 293–94, 893 P.2d 138, 144–45 (1995) (quoting *Kealoha v. County of Hawai'i*, 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993), *reconsideration denied*, 74 Haw. 650, 847 P.2d 263 (1993)) (citations and quotation marks omitted). Based on the foregoing reasoning, evidentiary decisions based on HRE Rule 401 are reviewed under the right/wrong standard of review. Evidentiary decisions based on HRE Rule 403, which require a "judgment call" on the part of the trial court, are reviewed for an abuse of discretion. *See Sato v. Tawata*, 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995) ("[T]he determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a 'cost-benefit calculus' and a 'delicate balance between probative value and prejudicial effect.'" (Citations and brackets omitted.)). An abuse of discretion occurs where the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to

4. HRE Rule 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

5. HRE Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawai['i], by statute, by these rules, or by other rules adopted by the supreme

court. Evidence which is not relevant is not admissible."

6. HRE Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

the substantial detriment of a party litigant." *Id.*

## III. *DISCUSSION*

### A. *Pynchon's Testimony Is Relevant Under HRE Rule 401.*

■ Under HRE Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We agree with the ICA's conclusion that Pynchon's testimony regarding her injuries in the present case was relevant because the jury had been presented with conflicting opinions by Chan's and Walsh's accident reconstruction experts regarding the sufficiency of the force generated by the collision between the two vehicles to cause Walsh's injuries. As Professor Bowman notes, "any evidence that affects the assessment of probability of a past occurrence has relevance and should be considered." A. Bowman, *Hawaii Rules of Evidence Manual* [hereinafter Bowman] § 401–2B at 68 (1990). We believe that Pynchon's testimony regarding the injuries she suffered while in the same car in which Walsh was a passenger, possesses some, albeit a minimal, tendency to prove a fact of consequence to the determination of the action, that is, the capacity of the accident to cause injury and the extent thereof. As Walsh essentially asserts, Pynchon's testimony regarding the injuries she sustained as a result of the accident supports the inference that the force generated by the collision was of sufficient magnitude to cause injury to *a* person in the same accident. This inference, in turn, supports the inference that Walsh, who was in the same car in the same accident, was likewise injured to some extent. We have employed this "chain of inference" analysis in analyzing HRE Rule 401 issues several times in the past. *See, e.g., Kaeo v. Davis,* 68 Haw. 447, 719 P.2d 387 (1986) (evidence that defendant drank four beers supported inference that defendant's perception and motor skills were impaired, which in turn supported inference of ultimate issue of negligent opera-

tion of motor vehicle); *Delos Reyes v. Kuboyama,* 76 Hawai'i 137, 146–47, 870 P.2d 1281, 1290–91 (1994) (evidence of reasonable foreseeability that minors other than those to whom liquor had been sold would consume the liquor, become intoxicated, and drive a vehicle could support inference of breach of duty on part of liquor store operator to persons injured by such minors' drunk driving); *Loevsky v. Carter,* 70 Haw. 419, 773 P.2d 1120 (1989) (evidence that defendant-motorcyclist had a "couple of beers" relevant to fault); *State v. Prince,* 67 Haw. 231, 683 P.2d 1217 (1984) (evidence that defendant tore a picture off the wall of his hotel room suite supported inference that defendant possessed a disregard for the value of money, which in turn supported an inference that defendant did not acquire his money by giving value or substantial services in return, which in turn supported an inference that defendant probably acquired his money dishonestly, which in turn supported an inference that defendant committed the charged robbery).

Moreover, as the ICA noted and as the record reflects, Chan's accident reconstruction expert, Charles P. Hatsell, testified at trial that the force generated by the collision between Chan's and Pynchon's cars was insufficient to cause injury. Thus, the magnitude and the sufficiency of the forces stemming from the collision arose as facts of consequence to which Pynchon's testimony was relevant to controvert. *See State v. O'Daniel,* 62 Haw. 518, 525, 616 P.2d 1383, 1389 (1980) (holding evidence relevant to disprove fact sought to be established by contradictory evidence proffered by opposing party); Bowman,´ *supra,* § 401–3C at 73 ("[F]acts sought to be established by the adversary become facts 'of consequence to the determination of the action' under rule 401 and are thus legitimate targets of disproof.").

In view of the foregoing, we hold that Pynchon's testimony regarding her injuries was relevant to the issue of Walsh's damages under HRE Rule 401.

### B. *Pynchon's Testimony Is Excludable Under HRE Rule 403.*

As previously noted, HRE Rule 403 provides that, "although relevant, evidence may

be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In the present case, Chan had argued in her motion in limine that admission of Pynchon's testimony would result in unfair prejudice to her because she could not be expected to defend against the issue regarding Pynchon's alleged physical injuries when Walsh never raised the issue in his pleadings. The ICA, however, held that "no unfair prejudice existed because Walsh named Pynchon as a prospective witness on the issue of damages in his pretrial statement filed and served on Chan on May 4, 1992." We disagree.

■ Our review of the record indicates that a basis existed for the trial court to conclude that the probative value of Pynchon's testimony was substantially outweighed by the negative admissibility factors delineated in HRE Rule 403. First, for purposes of balancing, we note that the probative value of Pynchon's testimony regarding her injuries as it relates to the ultimate issue of the existence and extent of Walsh's injuries, if any, is minimal. Admittedly, Pynchon's testimony could eliminate from the universe of possibilities the conclusion that the force generated by the impact between the accident vehicles was not sufficient to cause injury; however, as Chan notes, "Pynchon and Walsh are different people with different anatomies with different tolerances and predispositions to injury." Thus, we believe that Pynchon's testimony regarding her injuries lends minimal assistance to the jury in determining the nature and extent of Walsh's injuries.

Second, the probative value of Pynchon's testimony is further diminished by the relative lack of need for her testimony. As Professor Bowman notes:

Probative value is a function not only of relevancy, but also of need for the evidence. Need assessment has perhaps three elements: (a) the centrality or rela-

tive importance of the fact to be inferred in the overall context of the lawsuit; (b) the degree to which the fact to be inferred is actually disputed; and (c) the availability and quality of other evidence tending to prove the same point.

Bowman, *supra*, § 403–2A(2) at 81.

As previously noted, the centrality and/or importance of the fact to be inferred in the overall context of the lawsuit, that is, that the collision was sufficiently forceful so as to cause injury generally, was a stepping stone to the ultimate fact in controversy, that is, that Walsh was injured as a result of the accident. At trial, Hatsell testified that the forces generated by the collision between the accident vehicles were not sufficient to cause injury. Walsh, however, called expert witness Steven Miller, who testified that the forces that were generated by the collision were sufficient to cause injury. Thus, although the fact of the force of the collision was disputed, Walsh was not without evidence to refute Hatsell's testimony. The need for Pynchon's testimony, therefore, was not as crucial as it would be without Miller's testimony.

Third, we believe that the admission of Pynchon's testimony would cause substantial delay and confusion that may alone counterbalance its probative value. In order for Pynchon's testimony to be admissible, Walsh must initially establish, as foundation, that Pynchon's injuries were caused by the accident. Establishing causation, as Chan notes, would likely involve inquiry into the nature of Pynchon's injuries, her medical and work histories, backgrounds, and previous injuries, which, in turn, would likely require the presentation of time-consuming expert medical testimony. The jury's attention would be drawn away from the ultimate issue of the nature and extent of Walsh's injuries by a mini-trial on the nature and extent of Pynchon's injuries, creating a substantial danger of confusing the jury.

Fourth, we believe that there is a substantial danger that Chan would be unfairly prejudiced because the jury might misconstrue

the relevance of Pynchon's testimony and accord it more probative value than it deserves. As previously mentioned, at such time as Pynchon's testimony regarding the nature and extent of *her* injuries were offered to prove the nature and extent of *Walsh's* injuries, the inherent dissimilarities between Pynchon and Walsh—and, in the general case, any two people—would threaten to undermine the probative value of the testimony altogether. The circumstantial similarities between Pynchon and Walsh would render tantalizing the forbidden conclusion that, because Pynchon and Walsh were side-by-side in the same car in the same accident, if Pynchon were injured, Walsh must also have been similarly injured. This temptation would be further amplified by the amount of time that would invariably be spent on establishing the foundation for the admission of Pynchon's testimony.

In view of the foregoing, we hold that the trial court did not abuse its discretion in granting Chan's motion in limine to exclude Pynchon's testimony.

## IV. *CONCLUSION*

Accordingly, we reverse the portion of the ICA's decision vacating the trial court's denial of Walsh's motion for new trial on the basis that Chan's motion in limine to exclude Pynchon's testimony was erroneously granted. The ICA's decision is affirmed in all other respects, and the case is remanded for a new trial.