263 P.3d 726

Gregory **KANAHELE**, Sr., Individually and as Next Friend of Gregory Kanahele, Jr., a minor, and Trishalynn Kanahele, a minor, Petitioners/Plaintiffs–Appellees/Cross–Appellants

v.

James **HAN**, Respondent/Defendant–Appellant/Cross–Appellee.

No. SCWC–29800.

Supreme Court of Hawai'i.

Oct. 12, 2011.

Richard Turbin, (Rai Saint Chu and Janice D. Heidt with him on the application and briefs) (Turbin Chu, a Law Corporation), for petitioners/plaintiffs-appellees/cross-appellants.

James T. Wong, for respondent/defendant-appellant/cross-appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and MCKENNA, JJ.

Opinion of the Court by ACOBA, J.

We hold that in a personal injury case (1) when a jury awards special damages but returns a zero general damages award for pain and suffering, it is not an abuse of discretion for the court to instruct the jury that the verdict is inconsistent, and to direct the jury to continue deliberations on the amount of general damages to be awarded; (2) when, after resubmittal to the jury in such a case, the jury returns a general damages award that is the symbolic equivalent of no award, the verdict is inconsistent; thus,

(3) in the instant case, the jury's $1.00 general damages award, after resubmittal of the general damages question, was the symbolic equivalent of no award at all, in light of its $12,280.41 special damages award; and (4) under the circumstances of this case, a new trial on damages must be granted. The application for writ of certiorari (Application) in this case was filed on July 5, 2011 by Petitioners/Plaintiffs–Appellees/Cross–Appellants Gregory Kanahele, Sr. (Kanahele), individually and as next friend of Gregory Kanahele, a minor (Gregory), and Trishalynn Kanahele, a minor (Trishalynn) (collectively, Petitioners). Petitioners sought review of the April 27, 2011 judgment of the Intermediate Court of Appeals (ICA) filed pursuant to its April 7, 2011 summary disposition order (SDO)[1] affirming the April 24, 2009 final judgment filed by the circuit court of the first circuit (the court).[2] *See Kanahele v. Han,* No. 29800, 2011 WL 1335732, at *5 (App. Apr. 7, 2011) (SDO).

## I.

The following essential matters, some verbatim, are from the record and the submissions of the parties.

At approximately 7:20 a.m. on December 16, 2003, Gregory was struck by a vehicle driven by Respondent/Defendant–Appellant/Cross–Appellee James Han (Respondent) while Gregory was in a crosswalk attempting to cross a roadway near the intersection of Likini and Ala Nalana Streets in Honolulu. Kanahele and Gregory's sister Trishalynn witnessed the collision.

On April 5, 2006, Petitioners filed a Complaint against Respondent alleging, *inter alia,* that the accident was caused by Respondent's negligent conduct, that Gregory sustained "severe physical injuries, pain, suffering, serious emotional distress, and loss of enjoyment of life[,]" and that Kanahele and Trishalynn suffered injury.

Jury trial commenced on February 25, 2008. The February 21, 2001 videotaped deposition testimony of Dr. Timothy McLaughlin (Dr. McLaughlin), the doctor who "consulted, evaluated, and managed" Gregory's injury and saw Gregory after the incident, was played to the jury. Dr. McLaughlin explained that Gregory had been in an accident in which the handlebar of Gregory's racer scooter went through his cheek. Gregory was "distraught" and "very upset" when Dr. McLaughlin first saw him at Kapi'olani Hospital. According to Dr. McLaughlin, when Gregory arrived at the hospital, he was in "mild to moderate distress" and in "pain". Gregory had difficulty opening his mouth.

Gregory had a "complex laceration" of his cheek and a two-inch laceration on his jaw bone. One two-inch laceration went through the mandible[3] and up the cheek, and another approximately three-inch laceration was inside the mouth. There was also ripping of the "buccal mucosa"[4] and gums, that caused a "gaping wound" inside the mouth. Dr. McLaughlin stated that he performed a "complex closure with an advancement flap[.]"

In this procedure, he cleaned the wound, used scissors or a scalpel blade to remove the tissue that could not be saved, sutured it to put the remaining skin together, and then covered the skin with an advancement flap, or tissue that was rotated from the top cheek. The operation took two hours, and he used dozens of sutures. Risks of the surgery were poor cosmetic outcome, scarring, salivation problems, difficulty swallowing, and chronic tooth pain. If Gregory did not have surgery, he would be quite disfigured. Ac-

---

1. The SDO was filed by Presiding Judge Daniel R. Foley, and Associate Judges Alexa D.M. Fujise and Katherine G. Leonard.

2. The Honorable Glenn J. Kim presided.

3. The mandible is defined as the "lower jaw consisting of a single bone or of completely fused bones." *Merriam Webster's Collegiate Dictionary* 706 (10th ed. 1993)

4. Dr. McLaughlin explained that the buccal mucosa refers to the lining of the inside of the mouth. *See De Leon v. State,* 684 S.W.2d 774, 776 (Tex.Ct.App.1984) (stating that the buccal mucosa "is the internal surface of the mouth under the lips and gums").

cording to Dr. McLaughlin, Gregory did not suffer pain at the time of the procedure because he was under local anesthesia, and it was unclear whether he had a permanent scar.

The medical invoices indicated that on December 16, 2003, Gregory received treatment for his injuries that were described as an "open wound[,]" "wound(s), complex," and a "head injury[.]" He was "[t]ransport[ed]" by "[a]mbulance" to Kapiolani Medical Center. He received a "tetanus" immunization, was given "lidocaine[,]" which is a "crystalline compound [ ] that . . . is used . . . in the form of its hydrochloride as a local anesthetic[,]" *Merriam Webster's Collegiate Dictionary* 671 (10th ed. 1993), and "acetaminophen," which is a "crystalline compound [ ] that . . . is used . . . in medicine to relieve pain and fever[.]" *Id.* at 9. Gregory received treatment from December 16, 2003 to September 3, 2004.

The cost of Dr. McLaughlin's treatment was $7,924.49. Additionally, invoices for medical care and treatment indicated that Gregory incurred $12,280.41 in total [5] for bills relating to the accident. The medical costs included services for X–rays, and "CT[s]" [6] of the "[m]axillofacial [a]rea[,]" "[h]ead" and "coronal, sagittal, MU[.]" [7]

Moreover, Respondent testified that, when driving at a speed of fifteen to twenty miles per hour, the side-view mirror of his automobile hit Gregory, who was pushing a motor scooter. After the accident, a hairline crack extended across Respondent's windshield. Respondent exited his car and went to Gregory, who was moaning and "bleeding from his mouth." Respondent carried him to the sidewalk. Respondent saw blood "around" Gregory's chin and mouth.

On March 3, 2008, the court read the instructions to the jury, explaining, *inter alia*,

that "[g]eneral damages are those damages which fairly and adequately compensate plaintiff(s) for any past, present, and reasonably probable future disability, pain, and emotional distress caused by the injuries sustained[,]" whereas special damages are those that "can be calculated precisely or can be determined . . . with reasonable certainty from the evidence." Additionally, the court stated that pain is "subjective, and medical science may or may not be able to determine whether pain actually exists[,]" but the jury was to "decide, considering all the evidence, whether pain did, does and will exist." Furthermore, the court instructed that if the jury found that Respondent was liable, Petitioners were "entitled" to damages that would "fairly and adequately compensate them for the injuries they suffered." To that end, the jury was to consider the following:

1. *The extent and nature of the injuries [Petitioners] received,* and also the extent to which, if at all, the injuries they received are permanent;

2. The deformity, scars and/or disfigurement [Gregory] received, and also the extent to which, if at all, the deformity, scars and/or disfigurement are permanent;

3. *The reasonable value of the medical services provided by physicians, hospitals and other health care providers,* including examinations, attention and care, drugs, supplies, and ambulance services, reasonably required and actually given in the treatment of [Gregory];

4. *The pain, emotional suffering, and disability which they have received* and are reasonably probable to suffer in the future because of the injuries, if any.

(Emphases added.) The court also provided the jury with a special verdict form.

■ That day, March 3, 2008, the jury reached a verdict. The jury's special verdict

---

**5.** Services for the following entities and doctors were charged as follows: Kapiolani Medical Center for Women and Children, $3,552.45; Mid Pacific ENT, $7,924.49; Robert Dimauro, M.D., $282.88; Ronald Hino, M.D., $100.59; and Ambulance, $420.00.

**6.** CT probably refers to a "CAT" scan. "CAT scan refers to a computerized axial topography scan which makes a record of the internal struc-

tures of the body by passing x-rays through the body to act on specially sensitized film." *Walsh v. Chan,* 80 Hawai'i 188, 194 n. 6, 907 P.2d 774, 780 n. 6 (App.1995), *rev'd in part on other grounds but aff'd* "in all other respects," 80 Hawai'i 212, 908 P.2d 1198 (1995) (internal quotation marks and citation omitted).

**7.** These terms are not explained in the record.

determined that (1) Gregory was injured, but Kanehele and Trishalynn were not; (2) Respondent was negligent; (3) Respondent's negligence was a legal cause of the collision with Gregory; (4) Gregory was negligent; (5) the negligence of Gregory was a legal cause of the injury and damage sustained by him; (6) Kanahele was negligent; (7) the negligence of Kanahele was a legal cause of the injury and damage sustained by Gregory; (8) Respondent was 45% at fault for the injury, damage, or loss sustained by Gregory; (9) Gregory was 45% at fault for the injury, damage, or loss that he sustained; (10) Kanahele was 10% at fault for the injury, damage, or loss that was sustained by Gregory; and (8) Gregory suffered $12,280.41 in special damages but $0 in general damages.[8]

Upon approaching the bench, the parties agreed that the verdict was defective. Respondent's counsel stated that there was a "flaw" in the verdict inasmuch as when the jury finds special damages, it "must find at least one cent in general damages[,]" because case law indicates "if you have special damages there needs to be general damages." Petitioners' counsel agreed. Respondent's counsel proposed to give an instruction that the jurors must find "at least one cent" in general damages, to which Petitioners' counsel responded that such an instruction would be "prejudicial" because "it's inviting them to come back with one cent." The court asked for supplemental briefing by the parties, and directed the jury to return on March 5, 2008, because it was possible that the jury would have to continue deliberations.

On March 4, 2008, Respondent filed a supplemental memorandum arguing that the defective verdict could be "rectified" inasmuch as (1) the defect was discovered prior to the acceptance of the verdict, entry of judgment, and release of the jurors, and (2) the court

had the power to resubmit a potentially inconsistent verdict to the jury. Respondent proffered three options for the court: (1) send the jury into deliberation for consideration of the question regarding general damages without further instruction, (2) send the jury back into deliberation for consideration of the question regarding general damages with a further instruction explaining that some general damages must be awarded if special damages are awarded, and if the jurors cannot agree on an amount, nominal damages would suffice, (3) send the jury back into deliberation with a different instruction, explaining that if special damages are awarded, then some amount of general damages must also be awarded, at least in the nominal amount of $1.00. Respondent requested the second alternative.

On March 5, 2008, Petitioners filed a motion for a "Mistrial and/or New Trial Based on Rule 7 [9] and 59 [10]," arguing that the award of special damages with no general damages was improper and the court could not remedy the defect by instructing the jury regarding general and special damages because "[t]he jury has spoken and the court cannot direct them [sic] to change their [sic] mind." According to Petitioners, "it would be improper for the [c]ourt to direct the jury to change its mind on the issue of general damages and come back with some other amount. Obviously some other amount would be a nominal amount." (Citing Bynum, 106 Hawai'i at 85, 101 P.3d at 1153.) Petitioners argued that the court must grant a new trial and empanel a new jury.

On March 5, 2008, before the return of the jury, the court and the parties held a hearing. The court explained that the parties and the court had met in chambers on March 4, at which time the court informed the parties of its intended action. According to the

---

8. "General damages encompass all the damages which naturally and necessarily result from a legal wrong done, ... and include such items as pain and suffering, inconvenience, and loss of enjoyment which cannot be measured definitively in monetary terms." Bynum v. Magno, 106 Hawai'i 81, 85, 101 P.3d 1149, 1153 (2004) (internal quotation marks and citation omitted).

9. Hawai'i Rules of Civil Procedure (HRCP) Rule 7(b) (2008) provides in pertinent part that an

application for an order "shall be by motion which, unless ... during a hearing or trial, shall be made in writing[.]"

10. HRCP Rule 59(a) (2008) provides in pertinent part that a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the State[.]"

court, "applicable case law" [11] provided that an award of special damages without general damages is inconsistent, rendering the jury verdict in the instant case defective. Because acceptance of the verdict would require a new trial, the court proposed to "give the jury a supplemental jury instruction regarding this issue," and to tell them to deliberate on the general damages issue alone, "with the supplemental verdict form[.]"

Petitioners objected to the new instruction and the supplemental special verdict form, arguing that "the jury has already rendered an inconsistent verdict," and "to call [it] back, in essence re-impanel [it], and request that [it] change [its] verdict, is contrary to law." The court responded that it did not accept the verdict, the court was not re-impaneling the jury inasmuch as the court told the jury that it "was released for the day," and "might be going back into deliberations[,]" and only when a court "erroneously accept[s]" an inconsistent verdict is a new trial the only remedy.

Over Petitioners' objection, the court provided the jury, at 8:36 a.m. on March 5, 2008, with the following additional instruction:

As it now stands, your answer to question number 11 [12] on the special verdict form regarding special and general damages of [Gregory] *is inconsistent under the law of this state. That is because you have found personal injury and have accordingly awarded special damages to a party, the law reasons that there must also be some degree of compensable general damages to that party.* The degree and amount of such compensable damages is for you to decide. To assist you in making your decision, it may be helpful for you to consider the instructions on damages already provided to you by the court.

(Emphasis added.) The jury was given a supplemental special verdict form asking, "What are the total special and general damages of [Gregory]?" The form indicated that special damages was awarded for $12,280.41, and left a blank to be filled in by the jury for the amount of general damages.

The jury returned to its deliberations, and at 9:03 a.m., the jury provided the following communication:

The jury has read the instructions and request the following clarification. With respect to general damages for [Gregory], what is the range the law allows? *What is the minimum under the law?*

(Emphasis added.) By agreement of counsel, the court responded, "As you have been instructed, the amount of general damages is for you to decide."

The jury returned to its deliberations, and at 9:35 a.m., returned with a general damages award of one dollar. Eleven out of the twelve jurors agreed with that amount.[13] The court orally entered judgment "in accordance with the verdict and the law." After discharge of the jury, Petitioners renewed their objection to allowing the jury to re-

---

**11.** The court cited *Walsh*, 80 Hawai'i at 194, 907 P.2d at 780, and *Dunbar v. Thompson*, 79 Hawai'i 306, 315, 901 P.2d 1285, 1294 (App.1995). *Walsh* noted that a

"zero" general damages award is either: (1) inconsistent with the special damages award; (2) in disregard of the proper instructions of the trial court; (3) against the great weight of the evidence; or (4) the result of an improper compromise by jurors unconvinced of liability but willing to compromise their positions in return for a limitation of damages to actual out-of-pocket losses.

80 Hawai'i at 194, 907 P.2d at 780 (citing Annotation, *Validity of Verdict Awarding Medical Expenses to Personal Injury Plaintiff, But Failing to Award Damages for Pain and Suffering,* 55 A.L.R.4th 186, 192 (1987) (other citation omitted)). *Dunbar* stated, "Where a defendant's liability to a personal injury plaintiff is established, a jury verdict which awards the plaintiff special

damages but no general damages for pain and suffering is generally regarded as improper." 79 Hawai'i at 315, 901 P.2d at 1294 (citations omitted).

**12.** Question 11 stated, "Without regard to your answers to question number 10 [regarding the percentage of negligence attributable to the parties], what are the total special and general damages of [Gregory], if any? (If you answered question number 1 'no' [involving whether Gregory was injured], then your answer to this question must be 0.)"

**13.** "[A] civil verdict can be less than unanimous[.]" *State v. Villeza,* 85 Hawai'i 258, 268, 942 P.2d 522, 532 (1997); *see* HRS § 635–20(1993) ("In all civil cases tried before a jury it shall be sufficient for the return of a verdict if at least five-sixths of the jurors agree on the verdict.").

deliberate on the general damages issue, which the court denied.

On April 3, 2008, Petitioners filed a motion for a new trial, arguing that a new trial must be granted because (1) both special and general damages are largely dependent on the same proof, (2) by awarding special damages for medical expenses, the jury must have determined that Gregory sustained some pain and suffering, (3) the jury's failure to award general damages was inconsistent with its award of special damages, (4) the court's additional instruction, in effect, told the jury to return with a nominal amount, which is not a proper award for general damages, and (5) the nominal $1.00 general damages award did not remedy the defective verdict. The motion was denied on June 27, 2008. After reduction for the negligence of Gregory, judgment "in favor of .[Gregory] and against [Respondent] and [Kanahele] for the total amount of $6,754.77[ ]" was entered on June 30, 2008.[14]

## II.

On May 1, 2009, Respondent filed a notice of appeal,[15] and on May 15, 2009 Petitioners filed a notice of cross appeal.

Petitioners contended that, *inter alia*, the court abused its discretion when it denied Petitioners' (1) March 5, 2008 motion for a mistrial and/or a new trial in which Petitioners argued that the court should not have issued a supplemental instruction directing it to change its verdict to comply with Hawaiʻi law and award an amount of general damages; (2) April 3, 2008 motion for a new trial, in which Petitioners argued that the verdict was inconsistent because there was sufficient

evidence to award damages for pain and suffering; and April 3 motion for a new trial, in which Petitioners argued that the jury's finding that Gregory was 45% at fault and Kanahele was 10% at fault went against the great weight of the evidence. Petitioners demanded a new trial.

On April 7, 2011, the ICA issued its SDO affirming the final judgment of the court and rejecting the contentions asserted by both Respondent and Petitioners.

As a preliminary matter, the ICA noted that Petitioners' opening brief did not comply with Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(4) [16] "because [it] fail[ed] to cite where in the record the alleged errors occurred and were objected to[,]" and warned counsel that "future violations of HRAP Rule 28(b)(4) may result in sanctions against them." *Kanahele*, 2011 WL 1335732, at *1 n. 2.

As to Petitioners' first contention that the court should have ordered a new trial rather than give the supplemental instruction, the ICA reasoned that "it was within the ... court's authority to provide a supplemental jury instruction and verdict form to correct the inconsistency in the verdict[,]" *id.* at *3, because (1) the "court saw that the general damages award was inconsistent with the special damages award[, and] '[w]hen an ambiguous or improper verdict is returned by the jury, the court should permit the jury to correct the mistake before it is discharged[,]' " *id.* at *2 (quoting *Dias v. Vanek*, 67 Haw. 114, 117, 679 P.2d 133, 135 (1984)); (2) *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir.2003) [17] was relevant inso-

---

**14.** However, final judgment was not entered until April 24, 2009. On July 25, 2008, Petitioners filed a notice of appeal from the judgment, but on November 18, 2008, the ICA dismissed it for lack of jurisdiction on the ground that the court's judgment did not satisfy the requirements of an appealable final judgment. The final judgment entered on April 24, 2009, in addition to the language in the previous judgment, stated that judgment was entered "in favor of [Respondent] and against [Trishalynn] ... and against [Kanahele]. There are no claims or parties remaining in this case. All other remaining claims are dismissed."

**15.** The ICA rejected Respondent's argument in his appeal. Inasmuch as Respondent did not submit an application for certiorari challenging the ICA's rejection, Respondent's assertions before the ICA, and the ICA's decision with respect to those assertions, are not discussed further.

**16.** HRAP Rule 28(b)(4) provides in pertinent part that an opening brief shall contain "[a] concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: ... (ii) where in the record the alleged error occurred; and (iii) *where in the record the alleged error was objected to ....*" (Emphasis added.)

**17.** *Duk,* 320 F.3d at 1058, held as follows:

far as it indicated that allowing the jury to correct its mistakes conserves judicial resources, and the time and convenience of the citizen jurors and the parties, *id.* at *3; (3) the "jurors [would] deliberate in accordance with the intent of the instructions of the court to revisit an issue," inasmuch as it is presumed that jurors will properly perform their duties and not subvert the law, *id.* (citations omitted).

As to Petitioners' second contention that the $1.00 general damages award was inconsistent with the evidence, the ICA explained that since Petitioners "failed to provide transcripts of [Kanahele's], [Geregory's], and [Trishalynn's] testimonies in which these witnesses might have testified as to Gregory['s] ... injuries and his accompanying pain and suffering[,]" the ICA "[wa]s not in a position to determine if the award of $1.00 is inconsistent with the evidence." *Id.* at *3. Although a deposition of Dr. McLaughlin, who repaired Gregory's facial wounds, Respondent's testimony, and the medical invoices were in the record, the ICA concluded that without those transcripts, it had an "insufficient basis on which to conclude that the jury's award was inconsistent with the evidence." *Id.* (citing *Lepere v. United Pub. Workers, Local 646, AFL–CIO,* 77 Hawai'i 471, 474, 887 P.2d 1029, 1032 (1995)).

Petitioners' third contention, that the jury went against the weight of the evidence in finding Kanahele 10% liable, and Gregory 45% liable, is not raised in its Application.

On April 18, 2011, Petitioners filed a Motion for Reconsideration on the issue of the one dollar general damages award. On April 26, 2011, the ICA denied the motion for reconsideration.

> [W]hen the jury is still available, resubmitting an inconsistent verdict best comports with the fair and efficient administration of justice. Allowing the jury to correct its own mistakes conserves judicial resources and the time and convenience of citizen jurors, as well as those of the parties. It also allows for a resolution of the case according to the intent of the original fact-finder, while that body is still present and able to resolve the matter.

18. HRAP Rule 38 provides that "[i]f a Hawai'i appellate court determines that an appeal decid-

## III.

Petitioners list the following question in the Application:

> Whether the ... court and ICA erred by failing to grant a new trial when the jury returned a verdict for zero general damages then amended their verdict and awarded a nominal amount of one dollar general damages after being instructed by the court that they must award general damages.

■ Respondent filed a Response to the Application (Response) on July 20, 2011, arguing that Petitioners' Application should not be accepted because (1) its "Statement of the Facts" section contains four paragraphs describing the accident that are unsupported by record references, in violation of HRAP Rule 28, despite the ICA's warning that failure to comply with HRAP in the future may result in sanctions; (2) Petitioners have failed to carry their burden of proving that the jury failed to meaningfully consider whether Gregory should have been awarded a greater amount in general damages inasmuch as they do not provide "all evidence" relevant to the issue or all the facts that the jury considered; and (3) Petitioners misrepresented the ICA's opinion to this court when stating that the ICA found the "zero damages award was inconsistent with the evidence, therefore, it too should have further found that the nominal award of one dollar in general damages was inconsistent with the evidence." [Response at 5] (quoting Application). (Internal quotation marks omitted.) Respondent "asks that [this c]ourt make a finding under Rule 38 [18] of the [HRAP] so that appropriate action may be taken[.]" [19]

ed by it was frivolous, it may, after a separately filed motion or notice from the appellate court and reasonable opportunity to respond, award damages, including reasonable attorneys' fees and costs, to the appellee."

19. Respondent asks for this finding, due to Petitioners' filing of a writ with "insufficient factual support[.]" However, inasmuch as the Application is accepted, the Application is not "frivolous[,]" HRAP Rule 38, and, thus, Respondent's request for such a finding is denied.

## IV.

Respondent's first and third arguments, which are procedural in nature, are addressed before reaching the dispute in the Application and Response regarding the merits. Respondent's first argument that Petitioners' Application be rejected is not persuasive because (1) the four paragraphs lacking record references are uncontested, (2) authority for rejecting an application for non-compliance with HRAP Rule 28(b)(3) is not provided, and (3) this court's policies support a review of the merits of an application.

The Application's "Statement of the Facts" section consists of approximately three pages. While the four paragraphs, totaling a page in length, lack record references, the rest of the section contains citations to the record on appeal and to the transcripts of the proceedings. The four subject paragraphs relate to the facts of the collision, wherein Petitioners state that (1) Gregory and Trishalynn were on their way to school, (2) Gregory was pushing his motor scooter in a crosswalk, (3) Gregory was hit by Respondent, who did not see Gregory or Trishalynn before the collision, (4) the scooter "flipped up and broke the windshield" of Respondent's car and the handlebar "punctured the left side of Gregory's [cheek,]" (5) the impact threw Gregory "approximately 17 feet to the east[,]" (6) Gregory was transported in serious condition to the emergency room "where he was observed for a concussion and had oral surgery to repair the wounds to his face and mouth[,]" and (7) as a result, Gregory sustained physical injuries and incurred general and special damages. None of these matters are at issue since liability and treatment are not disputed.

Respondent does not cite a case dismissing an application or denying an appeal because of non-compliance with HRAP Rule 28(b)(3). HRAP Rule 30 provides in pertinent part that "[w]hen the brief of an appellant is otherwise not in conformity with these rules, the appeal *may* be dismissed or the brief stricken and monetary or other sanctions may be levied by the appellate court[,]" (emphasis added), giving an appellate court "discretion" to determine the proper course of action, *In re McKeague*, No. 27567, 2006 WL 1892821, at *1 (July 11, 2006) (SDO).

This "discretion" has been exercised often in favor of reaching the merits, in light of the " 'policy of affording litigants the opportunity to have their cases heard on the merits, where possible[.]' " *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 420, 32 P.3d 52, 64 (2001) (quoting *Hous. Fin. and Dev. Corp. v. Ferguson*, 91 Hawai'i 81, 85–86, 979 P.2d 1107, 1111–12 (1999)) (some internal quotation marks and other citation omitted). Additionally, HRAP Rule 2 allows an appellate court, "[i]n the interest of expediting a decision, or for other good cause shown," to "suspend the requirements or provisions of any of these rules in a particular case ... and may order proceedings in accordance with its direction." Thus, in *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994), this court, "pursuant to HRAP Rule 2," "elect[ed]" to "address the issue posed by th[e] appeal[,]" despite its lack of compliance with HRAP Rule 28(b)(4), quoted *supra*.

In light of the fact that Respondent does not challenge the facts in the four paragraphs as untrue, this court and the ICA have reached the merits notwithstanding a HRAP Rule 28(b)(3) violation in other cases, and the instant Application does not contain numerous violations, Respondent's request to dismiss the Application is denied.

## V.

Respondent's third argument, that Petitioners misstated the ICA's opinion in declaring that the ICA found the zero general damages award was inconsistent with the evidence, is arguable. While Petitioners could have been more precise, lack of precision should not result in rejection of the Application. The ICA stated that "the circuit court saw that the general damages award was inconsistent with the special damages award[.]" *Kanahele*, 2011 WL 1335732, at *2. Petitioners contend that the ICA found a zero general damages award to be "inconsistent with the *evidence*," in the context of arguing that the ICA should have found that the nominal award was inconsistent with the evidence. (Emphasis added.) Inasmuch as

the ICA stated that the court found the lack of an award of general damages was inconsistent with the amount of special damages, it could be inferred the zero general damages award was inconsistent with the evidence. Thus, this objection is not discussed further.

## VI.

Turning to the question raised in the Application and Respondent's second argument, Petitioners assert[20] that (1) there is a general rule that a new trial must be granted when, as here, a jury awards a zero amount in general damages after awarding the amount requested in special damages; (2) the court, in effect, instructed the jury to return with a nominal amount of general damages; (3) the jury's one dollar award is inconsistent with the evidence and requires a new trial; (4) the ICA found that the zero general damages award was inconsistent with the evidence and therefore it should have found the nominal one dollar award was also inconsistent with the evidence; and (5) the transcripts of Petitioners' testimony were unnecessary because "a plaintiff is entitled to . . . compensation for pain and suffering if he is awarded compensation for his medical ex-

penses[,] because the same evidence is used to prove the medical expenses as [ ] pain and suffering."[21]

## VII.

■■ As to Petitioners' first assertion, it is well established that "[a] personal injury plaintiff is generally entitled to recover damages for all the natural and proximate consequences of the defendant's wrongful act or omission"; "where a defendant's liability to a personal injury plaintiff is established, a jury verdict which awards the plaintiff special damages but no general damages for pain and suffering is generally regarded as improper," *Dunbar*, 79 Hawai'i at 314–15, 901 P.2d at 1293–94,[22] inasmuch as "[t]he inescapable conclusion is that the jury awarded . . . medical expenses which [the plaintiff] had incurred and failed to award any damages for pain and suffering[,]" *Powers v. Johnson*, 562 So.2d 367, 370 (Fla.Dist.Ct. App.1990). In such circumstances, it may be appropriate to "remand . . . to the trial court for a new trial on the issue of general damages." *Id.; see Smith v. Uhrich*, 704 P.2d 698, 699–700 (Wyo.1985) (reversing and remanding "for a new trial on the issue of

---

**20.** Petitioners' arguments are not listed in the order in which they appear in the Application.

**21.** Petitioners also contend that there is an "appearance of impropriety" when the jury initially awards zero and subsequently awards one dollar in general damages. Inasmuch as Petitioners fail to explain this ground, and do not provide any supporting authority, this argument is not discussed further.

**22.** In *Dunbar*, the plaintiff had gotten into a fight with a male named Thompson while at Burger King (formally called Pentagram Corporation), and subsequently sued Thompson and Burger King. The jury returned a verdict, awarding the plaintiff $7,000 in special damages and no general damages, finding that Thompson "intentionally or negligently legally caused injury to [the p]laintiff," and that both Burger King and the plaintiff were negligent. *Dunbar*, 79 Hawai'i at 312, 901 P.2d at 1291 (brackets omitted). The jury found that Burger King's negligence was not a legal cause of the plaintiff's injury, but then attributed 10% of fault to Burger King. *Id.* at 313, 901 P.2d at 1292. The circuit court then entered judgment against Thompson and in favor of the plaintiff for $3,850, and entered judgment in favor of Burger King.

The plaintiff argued that "the jury's special verdict responses as to [Burger King's] liability

and the amount of Plaintiff's damages were irreconcilably inconsistent." *Id.* at 312, 901 P.2d at 1291. The ICA determined that the verdict was inconsistent as to liability because "there was no dispute at trial that [the p]laintiff sustained at least some injury as a result of the incident[,]" and "the jury's finding that [Burger King] caused the incident with the jury's finding that [Burger King] did not cause the injuries that undisputably resulted from the incident" was irreconcilable. *Id.* at 314, 901 P.2d at 1293.

With respect to the inconsistency in the award of special damages as compared to the general damages issue, the plaintiff had claimed entitlement to special damages of $4,368.26 for medical expenses and $60,422 for loss of income. The ICA determined that it was unclear what the jury's award of $7,000 in special damages was meant to encompass, but if the $7,000 included an award for medical expenses, it was inconsistent for the jury not to award the plaintiff even a small amount for pain and suffering, since both special damages for medical expenses and general damages for pain and suffering are largely dependent on the same proof. *Id.* at 315, 901 P.2d at 1294. Because liability and damages were disputed, the ICA remanded for a new trial on all issues. *Id.* at 316, 901 P.2d at 1295.

general damages" when the jury returned a verdict finding special damages but no general damages). In a similar vein, the ICA has remanded for a new trial on damages when the parties stipulated to the defendant's liability, "and the only issue on appeal [wa]s damages[.]" *Walsh*, 80 Hawai'i at 196, 907 P.2d at 782. Thus, Petitioner is correct that when an award of special damages indicating physical injury is rendered, a zero award of general damages is improper and generally results in a new trial on general damages when liability is not disputed.

However, when, as here, "the jury [wa]s still available," it was within the court's discretion to determine that "resubmitting an inconsistent verdict best comport[ed] with the fair and efficient administration of justice." *Duk*, 320 F.3d at 1058. Permitting a jury to "correct its own mistakes conserves judicial resources and the time and convenience of citizen jurors, as well as those of the parties[,]" and allows the case to be resolved "according to the intent of the original factfinder, while that body is still present and able to resolve the matter." *Id.* Accordingly, the court did not abuse its discretion in resubmitting the damages issue to the jury, rather than ordering a new trial, after the zero general damages verdict.

## VIII.

▮ Contrary to Petitioners' second assertion, on resubmittal the court did not instruct the jury to return with a nominal amount but, instead, acted within its discretion by having the jury return, *see Dias*, 67 Haw. at 118, 679 P.2d at 136 ("The preferred remedy of an ambiguous verdict is to have the jurors return to clarify the verdict."), by asking for supplemental briefing, and by providing the jury with further instruction, *see Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988) (noting that the trial court has discretion to "resubmit the issues to the jury with a request for clarification[,]" "whether or not the parties themselves request clarification"). As noted *supra*, the court instructed that Petitioners were entitled to damages to compensate Gregory for "injuries" incurred. The court properly explained the law, and directed the jury to consider Gregory's injuries, when awarding general damages. *See Beard v. Flying J, Inc.*, 266 F.3d 792, 799 (8th Cir.2001) (stating that the trial court "sent the jury back for further deliberations" when believing that the jury had rendered an inconsistent verdict). Thus, the court did not "in effect" tell the jury to return with a nominal amount.

## IX.

However, as to their third and fourth assertions, Petitioners are correct inasmuch as verdicts that award special damages indicative of pain and suffering, but zero or nominal general damages, have been invalidated on the grounds that the general damages award is (1) "inconsistent with the special damages award[,]" (2) "in disregard of the proper instructions of the trial court[,]" (3) "against the great weight of the evidence[,]" or (4) "the result of an improper compromise by jurors unconvinced of liability but willing to compromise their positions in return for a limitation of damages to actual out-of-pocket losses." *Dunbar*, 79 Hawai'i at 315, 901 P.2d at 1294 (internal citations omitted); *see also Walsh*, 80 Hawai'i at 194, 907 P.2d at 780 (listing the four reasons). The first three grounds are readily evident in this case.

### A.

▮ Petitioners are correct that the return of a $1.00 general damages award, in light of a $12,280.41 award of special damages for medical treatments, renders the verdict inconsistent and requires a new trial on damages. The award of $1.00 was a nominal award that did not mitigate the zero award previously given, despite the court's resubmittal of the damages issue to the jury. In this case the $1.00 general damages award was the symbolic equivalent of a no award verdict that the jury had previously rendered.

### 1.

▮ While compensatory damages "seek to restore a plaintiff to his or her position prior to the tortious act[,]" nominal damages are "a small and trivial sum awarded for a technical injury due to a violation of

some legal right and as a consequence of which some damages must be awarded to determine the right." *Zanakis–Pico v. Cutter Dodge, Inc.,* 98 Hawai'i 309, 327, 47 P.3d 1222, 1240 (2002) (Acoba, J., concurring) (internal quotation marks and citations omitted). "[N]ominal damages are a token award only" and "a vast majority of cases ... usually adjudge one dollar to be the amount." *Ferreira v. Honolulu Star–Bulletin, Ltd.,* 44 Haw. 567, 579, 356 P.2d 651, 658 (1960); *see Black's Law Dictionary* 447 (9th ed. 2009) (defining nominal damages as, *inter alia,* "[a] trifling sum awarded when no legal injury is suffered but there is no substantial loss or injury to be compensated"). "[N]ominal damages may not exceed $1.00." *Minatoya v. Mousel,* 2 Haw.App. 1, 6, 625 P.2d 378, 382 (1981). "Nominal damages means no damages at all[,]" *Hall v. Cornett,* 193 Or. 634, 240 P.2d 231, 235 (1952), and are but "a mere peg to hang costs on[,]" *Ferreira,* 44 Haw. at 579, 356 P.2d at 658. In the instant case, the jury's verdict of $1.00 was a "small and trivial sum[,]" *Zanakis–Pico,* 98 Hawai'i at 327, 47 P.3d at 1240 (2002), inconsistent with medical treatment amounting to over $12,000.

### 2.

■■■ Thus, "[w]e must[ ] ... consider the ... verdict in its entirety as one giving noncompensatory and merely nominal general damages plus substantial special damages[.]" *Hall,* 240 P.2d at 236. When a jury awards special damages but nominal general damages, if there is "sufficient evidence to support an award for pain and suffering[,]" the "verdict is characterized as inconsistent[.]" *Walsh,* 80 Hawai'i at 194, 907 P.2d at 780. In the instant case, "sufficient evidence" supporting an award "for pain and suffering" exists, as demonstrated *supra,* thereby rendering the verdict that awarded nominal general damages but substantial special damages, "inconsistent[.]" *Id. Dunbar* and *Walsh* are instructive in this regard.

In part, *Dunbar* involved a challenge to the jury's award of no general damages as inconsistent with an award of $7,000 special damages and was against the great weight of the evidence. 79 Hawai'i at 313, 901 P.2d at 1292. The ICA reasoned that "it was inconsistent for the jury not to award [the p]laintiff even a small amount for pain and suffering," because "both special damages for medical expenses and general damages for pain and suffering are largely dependent on the same proof." *Id.* at 315, 901 P.2d at 1294. Moreover, the verdict went against the great weight of the evidence inasmuch as the "uncontroverted" evidence "adduced at trial" demonstrated that the plaintiff was knocked to the floor and sustained a gash to her head, resulting in "profuse bleeding" and requiring stitches. *Id.* Because of those injuries, the plaintiff "clearly experienced" "pain and suffering[.]" *Id.*

■■■ Here, "it was inconsistent for the jury," *id.,* to award a nominal amount of $1.00 as general damages inasmuch as "both special damages for medical expenses and general damages for pain and suffering are largely dependent on the same proof[,]" *id.* The special damages "proof" indicated that Gregory endured pain and suffering. The "uncontroverted" evidence from Dr. McLaughlin demonstrated that the handlebar of a racer scooter penetrated Gregory's cheek, and by the time he arrived at the hospital, he was in "mild to moderate distress and pain" and surgery was performed. Medical invoices admitted into evidence also show that Gregory was treated for an "open wound[,]" he had a head injury, he was given pain killers, he had numerous stitches, and he was treated over a period of almost a year. In this regard, the court and the ICA should have found the $1.00 award was as inconsistent with the evidence as the zero award.

Additionally, as noted before, Respondent testified that he hit Gregory when driving at the speed of fifteen to twenty miles per hour, and as a result of the collision, Respondent's windshield was cracked. Thus, insofar as the "proof" indicated that Gregory was struck by a car, was consequently injured, incurred surgery and other medical treatment therefor, and endured at least mild to moderate distress and pain from injuries stemming from the collision, it was plainly inconsistent for the jury to award $1.00 in general damages.

*Walsh* also involved a challenge to a verdict awarding the plaintiff $8,600 special damages and no general damages. 80 Hawai'i at 194, 907 P.2d at 780. There, the ICA determined that the "damage award [was] inconsistent because in awarding the amount of $6,100 towards medical care, the jury determined that part of [the plaintiff's] injuries was caused by the accident and there was evidence of pain and suffering[.]" *Id.* The evidence of pain and suffering adduced at trial included a doctor's testimony that the injections, surgery, and post-operative recovery were painful. However, if the jury decided the injections, surgery, and post operative recovery were not due to the injury, "there still [was] sufficient evidence that [the plaintiff] experienced pain and suffering to require some award of general damages." *Id.* at 195, 907 P.2d at 781.

To that end, the "sufficient evidence" consisted of (1) the "total value" of medical care, which was $6,100 and consistent with the jury's award of that amount for medical care; and (2) the jury's award of $2,500 for lost wages, a month's pay, which was "indicative" of the jury's conclusion that the plaintiff's injuries "sufficiently disabled him from working[.]" *Id.* The ICA reasoned that, "[b]y awarding special damages for medical expenses, the jury must have determined that [the plaintiff] sustained some injury[,]" and therefore "it was inconsistent for the jury not to find some pain and suffering" for the injury attributable to the accident and "award at least some amount for general damages." *Id.*

Similarly, in the instant case, Dr. McLaughlin's testimony, Respondent's testimony, and the medical invoices, constituted "sufficient evidence that [Gregory] experienced pain and suffering to require some award of general damages" "consistent," *id.* at 195, 907 P.2d at 781, with the amount awarded as special damages. Because the verdict was inconsistent, "the judgment of the [ ] court [and the ICA]" are vacated and the case "remand[ed] for a new trial." *Dunbar*, 79 Hawai'i at 316, 901 P.2d at 1295.

## B.

▮ As to (2), the jury disregarding the law, *Walsh* is apposite. There, the ICA determined that the jury disregarded the law because, in light of the instructions that are similar to the instant case, the plaintiff was entitled to general damages adequately compensating him for, *inter alia*, his injuries, medical services, and pain and suffering. Here, as in *Walsh*, the court instructed the jury that if Respondent was liable, Petitioners were to be awarded damages for pain and suffering. However, here the jury gave only $1.00 for pain and suffering, thereby disregarding the court's instruction that the jury was to consider "the extent and nature of the injuries received," "the reasonable value of the medical services provided," and "the pain, emotional suffering and disability" incurred by Gregory. Demonstrating the jury's disregard of the court's directive was the jury communication asking what the "minimum" award required under the law was, indicating that the jury was not considering fair and adequate compensation for Gregory, but seeking to reinstate its first verdict of zero to the extent possible. Thus, it can be inferred reasonably that the jury disregarded the court's instruction on damages.

## C.

As to (3), it is plain that the verdict was against the great weight of the evidence, as contained in Dr. McLaughlin's testimony, Respondent's testimony, and the medical invoices. However, Respondent contends that Petitioners' failure to provide the court with all supporting and contradictory [23] references requires rejection of the Application, relying on what Respondent views as "cogent[ ]" language from the ICA opinion:

The burden is upon appellant in an appeal to show error by reference to matters in the record, and he has the responsibility of providing an adequate transcript. Moreover, if the appellant wishes to urge that a finding or conclusion is unsupported by the evidence, he must include a tran-

---

23. Respondent does not indicate what "contra- dictory" evidence exists.

script of all the evidence relevant to such finding or conclusion.

. . . .

The law is clear in this jurisdiction that the appellant has the burden of furnishing the appellate court with a sufficient record to positively show the alleged error. An appellant must include in the record all of the evidence on which the lower court might have based its findings and if this is not done, the lower court must be affirmed.

*Kanahele*, 2011 WL 1335732, at *4 (quoting *Union Bldg. Materials Corp. v. Kakaako Corp.*, 5 Haw.App. 146, 151–52, 682 P.2d 82, 87 (1984) (ellipsis in original)) (citations and emphasis omitted). However, that language was used in rejecting Petitioners' contention that there was "error" as to *liability* when the jury found Kanahele 10% liable and Gregory 45% liable. *Id.* Understandably, transcripts of the parties, "which would likely have provided evidence as to alleged liability," *id.*, may be necessary in determining that the apportionment of liability was appropriate. However, this issue is not raised in the Application; the only issue is whether the general damages award was proper and, as set forth *supra*, there is a "sufficient record to positively show the alleged error." *Union Bldg. Materials*, 5 Haw.App. at 151, 682 P.2d at 87.

### X.

In connection with Petitioners' fifth assertion, the ICA determined that without transcripts of Gregory's, Trishalynn's, and Kanahele's testimonies, it had an insufficient basis to conclude that the jury's award was inconsistent with the evidence. *Kanahele*, 2011 WL 1335732, at *3. However, under the circumstances of this case, these transcripts were unnecessary to conclude that the general damages award was improper. To reiterate, in the instant case, there was "probative evidence" of Gregory's pain and suffering in the form of Dr. McLaughlin's testimony, Respondent's testimony, and the medical invoices, as discussed *supra*, to reasonably justify compensation in excess of $1.00. *See Walsh*, 80 Hawai'i at 195, 907 P.2d at 781 (stating that the testimony of a doctor, combined with the medical records, amounted to sufficient evidence of pain and suffering).

A zero award of general damages may be allowed to stand, despite an award of special damages, when "the evidence indicate[d] a dispute over the amount of claimed special damages[ ]" such that "the zero-general-damages verdict [i]s evidence of the jury's intent to include in the special damages award an amount for pain and suffering[,]" or "there is no probative evidence that the plaintiff incurred pain and suffering as a consequence of the defendant's act[,]" or "where the only evidence of pain and suffering is the plaintiff's subjective testimony, which the jury could reasonably have concluded was exaggerated or lacking in credibility." *Dunbar*, 79 Hawai'i at 316, 901 P.2d at 1295 (citations omitted). None of those circumstances exist here. Indeed, Respondent conceded on the record after the jury's zero general damages award that the general damages award was inconsistent with the special damages award.

Consequently, Petitioners met their burden of "furnishing the appellate court with a sufficient record to positively show the alleged error." *Union Bldg. Materials*, 5 Haw.App. at 151, 682 P.2d at 87. The award of $1.00 was, at the least, "inconsistent" with the evidence and, contrary to the ICA's SDO in this regard, the testimonies of Petitioners were not necessary to reach that determination.[24] Thus, the ICA gravely erred in concluding the evidence was insufficient to decide whether a $1.00 general damages award was inconsistent with the special damages award.

### XI.

Based on the foregoing, the April 27, 2011 judgment of the ICA is reversed, the April 24, 2009 judgment of the court is affirmed, except the damages award is vacated, and

---

24. Of course, insofar as the transcript testimony of Trishalynn and Kanahele related to their own claims of emotional distress, the transcripts would not be germane to Gregory's general damages claim.

the case is remanded to the court for a new trial on special and general damages.[25]

25. In their Application, Petitioners requested remand on the issue of damages. Proof of special damages may be interrelated with proof of general damages. As observed in *Dunbar*, "both special damages for medical expenses and general damages for pain and suffering are largely dependent on the same proof[.]" 79 Hawai'i at 315, 901 P.2d at 1294. Thus, in the instant case, we remand for a new trial on special and general damages.